UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In re LARRY T. KIMMES, | Case No. 4:14-cv-00103-BLW |
| Debtor, | MEMORANDUM DECISION |
| _____ | |
| LARRY T. KIMMES, | |
| Plaintiff and Appellant, | |
| v. | |
| D.L. EVANS BANK, | |
| Defendant and Appellee. | |

## INTRODUCTION

Pending before the Court is Appellant Larry T. Kimmes' appeal from the bankruptcy court's judgment in favor of Appellee D.L. Evans Bank. Kimmes also appeals the bankruptcy court's order awarding attorneys' fees and costs to the bank. For the reasons explained below, the Court will affirm.

## BACKGROUND

Larry T. Kimmes is the president of G&L Land & Livestock, Inc. He operates a farm near Gooding, Idaho. In 2000, Kimmes began banking with D.L. Evans Bank after

his friend and neighbor, Kelly Human, suggested that he bring his business to D.L. Evans.  Human was a loan officer with the bank.  The banking relationship went well for several years, but Human later transferred to a different branch office, and the bank assigned a variety of different loan officers to Kimmes over the years.  The relationship eventually soured, and Kimmes now says the bank's conduct ultimately forced him into bankruptcy.

The parties entered into various loan agreements over the years, but two loans are particularly relevant to this appeal:  Loan No. 4814 and Loan No. 5225.  Both relate to the construction of Kimmes' home.[1]  Kimmes obtained the first of these loans, No. 4814, in April 2008.  He used the majority of these loan proceeds to pay off prior loans, but he used around $85,000 of the loan money to help fund the construction of his home.  *See Excerpts of Record* ("ER"), Dkt. 8, at 651:17.  At trial, Kimmes testified that Chad Brown – the loan officer who took over Kimmes' account after Human left – promised that the bank would allow Kimmes to obtain a "conventional home loan" to fund the home construction.  ER 331.  No such loan was made, however, and Brown left the bank in the Fall of 2008.  Kimmes claims that if the bank had followed through on its promise to grant him a conventional home loan, he would have owed $83,000 less than he eventually owed the bank for financing the home construction.  *Opening Br.*, Dkt. 9, at 5.

---

[1] Kimmes testified that proceeds from a third loan, No. 4921, were also used to fund his house construction.  *See Excerpts of Record*, Dkt. 8, at 780.

Nevertheless, in May 2009, instead of refinancing his home with a conventional mortgage, Kimmes entered into Loan No. 5225 with the bank. The stated purpose of this loan was to refinance his home. *See* ER 785; Ex. 203. It was a closed-end, single-advance, variable-rate, ten-year term loan for $297,000. Kimmes used most of the proceeds of this loan ($236,738.70) to pay off the outstanding balance on Loan No. 4814. As security for this loan, the Kimmes and his wife granted the bank a deed of trust on their home. The deed of trust provide that a default would result from the "failure of [Kimmes] within the time required by this deed of trust to make payments for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien." ER 786; Ex. 204. Kimmes and his wife also expressly agreed that they "shall pay when due . . . all taxes, special taxes, [and] assessments . . . ." ER 786; Ex. 204, at 2. Upon default, the bank had the option to foreclose the deed of trust by notice and sale. Ex 204, at 4.

In 2008 and 2009, the Kimmes did not timely pay their real property taxes. ER 787; Exs. 113, 115, 192. In addition, by June 2010, Kimmes was past due on several of his loans from the bank. ER 787; Ex. 164 at 12-13. In response, the bank commenced a foreclosure on the deed of trust for Loan No. 5225. ER 787; Exs. 204 and 218. The bank did not provide any informal notices to the Kimmes, despite its internal policy to provide at least three such notices, plus an opportunity to cure the default.

After the bank commenced foreclosure proceedings, the Kimmes filed a chapter 12 bankruptcy petition. The bank filed a proof of claim in the amount of $1,375,990.60.

Kimmes objected, stating that "although the debtor agrees that an indebtedness is owed [to the bank], he objects as to the amount owed. It is believed that the amount owed is less than $1,175,000." *See* ER 788.

In October 2011, the bankruptcy court approved Kimmes' second amended chapter 12 plan. The plan stated that the bankruptcy court would resolve the parties' dispute regarding the bank's proof of claim and that Kimmes would pay an amount to be determined by the bankruptcy court. After the plan was approved, Kimmes commenced an adversary proceeding against the bank alleging, among other things, that the bank had (1) breached an agreement to grant him a "regular home loan," and (2) improperly failed to remove $6,760 in fees charged for insufficient funds. Based on these and other alleged wrongs, Kimmes' complaint asked the bankruptcy court to find that "'nothing is owed with respect to [Loan Number 5225] and that the Chapter 12 Plan should be modified accordingly.'" *See* ER 792 (alterations by the bankruptcy court).

After a four-day bench trial, the bankruptcy court entered judgment in favor of the bank. *See* ER 819 (judgment stating that Kimmes owes "the full amount due on the loans identified in D.L. Evans' Proof of Claim . . . ."). The bankruptcy court also awarded the bank approximately $23,500 in attorneys' fees and costs. ER 912. Kimmes appeals the judgment and the order awarding attorneys' fees and costs to the bank.

## STANDARD OF REVIEW

This Court has jurisdiction to entertain an appeal from the Bankruptcy Court under 28 U.S.C. § 158(a), which provides: "The district courts of the United States shall have

jurisdiction to hear appeals . . . from final judgments, orders, and decrees" of bankruptcy judges. On appeal, the bankruptcy court's conclusions of law are reviewed de novo and its factual findings for clear error. *In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009). A bankruptcy court's denial of a motion to amend a complaint is reviewed for an abuse of discretion. *See Ventress v. Japan Airlines*, 603 F.3d 676, 680 (9th Cir. 2010). An abuse of discretion occurs when a court "makes an error of law, rests its decision on clearly erroneous findings of fact, or when [the reviewing court is] left with a definite and firm conviction that the district court committed a clear error of judgment." *United States v. Hinkson*, 585 F.3d 1247, 1260 (9th Cir. 2009) (internal quotation marks and citation omitted).

## ANALYSIS

Kimmes contends that the bankruptcy court erred by:

(1)    denying his motion to amend his complaint;

(2)    finding that the bank had not agreed to grant him a "regular home loan";

(3)    finding that the bank had not agreed to forgive various insufficient-funds fees charged to his account;

(4)    concluding that the bank had not breached the covenant of good faith and fair dealing;

(5)    denying Kimmes' claim for $2,000 in attorneys' fees related to an alleged wrongful foreclosure on a pickup loan;

(6)    concluding that the bank did not commit any actionable wrong despite Kimmes' contentions that the bank generally failed to exercise good faith toward him; and

(7)     awarding attorneys' fees and costs to the bank.

The Court will address each issue in turn.

## 1.     The Bankruptcy Court Did Not Err in Denying Kimmes' Motion to Amend

Kimmes first argues that the bankruptcy court abused its discretion in denying his oral motion to amend his complaint. The requested amendment, made on the first day of trial, focused on the complaint's prayer for relief. The prayer for relief, in turn, focused on a single loan: Loan No. 5225. *See* ER 6 ("plaintiff prays that the Court find that nothing is owed with respect to Loan No. 1814005225/04[2] and, that the Chapter 12 Plan should be modified accordingly.") In his pretrial brief, however, Kimmes did not limit himself to Loan No. 5225. Instead, he asserted that he was entitled to an offset against the amount owing under *all* his loans with D.L. Evans. On the first day of trial, the bank objected and asked the bankruptcy court to clarify the scope of Kimmes' action. Kimmes then orally moved the court to amend his complaint.

The bankruptcy court denied Kimmes' motion to amend to the extent he was attempting to obtain a positive damages award, but reserved ruling on whether Kimmes could seek an offset against all the loans, rather than being limited to a potential offset against a single loan – Loan No. 5225. In the meantime, the bankruptcy court ruled that the parties could present evidence on all loans at trial. *See* ER 65:17-23.

---

[2] The parties refer to this loan by a four-digit number, 5225.

After trial, the bankruptcy court limited Kimmes' prayer for relief to Loan No. 5225, relying on Federal Rule of Civil Procedure 54(c), incorporated by Federal Rule of Bankruptcy Procedure 7054.

Rule 54(c) provides that, aside from default judgments, every "final judgment should grant the relief to which each party is entitled, *even if the party has not demanded that relief in its pleadings*." (emphasis added). The general purpose of Rule 54(c) is to "avoid the tyranny of formalism." *Rosden v. Leuthold,* 274 F.2d 747, 750 (D.C. Cir. 1960). There is, however, a significant limitation to the rule: A court cannot grant relief that was not specifically requested if doing so will prejudice the opposing party. *See Rental Dev. Corp. v. Lavery,* 304 F.2d 839, 842 (9th Cir. 1962) ("If . . . it is made to appear that the failure to ask for particular relief substantially prejudiced the opposing party, Rule 54(c) does not sanction the granting of relief not prayed for in the pleadings.").

In this case, the bankruptcy court concluded that the bank would be "severely prejudiced" if Kimmes were allowed to seek offsets against any loans other than Loan No. 5225. ER 799. The bankruptcy court reasoned that Kimmes' complaint did not adequately notify the bank that he would seek anything other than an offset against Loan Number 5225 as a remedy for the bank's various alleged wrongs. Further, as the bank points out, Kimmes' new theories as to the scope of his alleged harm raised new issues relating to a wide range of topics, including: the economic differences between leasing and working farm ground; the impact of pivot irrigation on crop yields; the impact of new

equipment on crop yields; and the impact of fertilizer on crop yields.  *See D.L. Evans'*

*Br.*, Dkt. 11, at 10.  Kimmes suggests that the bank could not have suffered any prejudice

at trial from his reliance on these new theories to support a damages claim because the

parties conducted discovery on all the loans – not just Loan No. 5225.  *Opening Br.*, Dkt.

9, at 3.  This argument is not persuasive, however, because it assumes that by reviewing a

generalized group of "loan documents," the bank would be able divine all of Kimmes'

damages theories and then prepare an adequate defense.  The Court is not convinced.  To

properly prepare for trial, Kimmes would need to alert the bank to these theories of

recovery in the pleadings or, at a minimum, at some point before filing his pre-trial brief.

Under these circumstances, the bankruptcy court did not abuse its discretion in

denying Kimmes' motion to amend his complaint to seek offsets against loans other than

Loan No. 5225.  The Court will therefore affirm this ruling.

**2.      The Bankruptcy Court Did Not Err in Finding that Kimmes Failed to
          Establish the Existence of an Oral Loan Agreement**

Kimmes next attacks the bankruptcy court's factual findings related to his claim

that the bank orally promised to grant him a conventional home loan.  The bankruptcy

court concluded that the bank had not made any such promise.  The bankruptcy court's

conclusion on this point ultimately rests, at least in part, on a credibility determination,

but the analytical starting point is the statute of frauds.

The bankruptcy determined that the oral loan agreement Kimmes alleged was

unenforceable under Idaho's statute of frauds.  *See* Idaho Code § 9-505(5).[3]  Kimmes

does not challenge this ruling on appeal.  The bankruptcy court further observed that

Kimmes could theoretically rely on the equitable-estoppel doctrine to avoid application

of the statute of frauds.  *See* ER 803 n.10.

> The elements of equitable estoppel are as follows:
>
> (1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth;
>
> (2) that the party asserting estoppel did not know or could not discover the truth;
>
> (3) that the false representation or concealment was made with the intent that it be relied upon; and
>
> (4) that the person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice.

*Washington Fed. Sav. v. Van Engelen*, 289 P.3d 50, 57 (Idaho 2012) (citation omitted).

The bankruptcy court found that Kimmes could not rely on the equitable-estoppel

doctrine because, among other things, the bank had never made any false representations

to Kimmes.  ER 803 n.10.  At trial, Kimmes testified that Brown had promised the bank

would grant him a conventional home loan.  Brown said he did not remember making any

---

[3] This section of Idaho's statute of frauds provides that various types of oral agreements are "invalid," including "a promise or commitment to lend money or to grant or extend credit in an original principal amount of fifty thousand dollars ($50,000) or more, made by a person or entity engaged in the business of lending money or extending credit."

such a promise.  After reviewing the relevant documentary evidence and testimony, the

bankruptcy court concluded that no such promise had been made:

> Kimmes testified Evans[] promised, through Brown, to assist him in
> applying for a "conventional mortgage," but the proof is inadequate that
> Evans promised anything more – *i.e.* to actually make him such a loan.
> There was no discussion of the terms of such a loan, and certainly an
> agreement was never reached as to those terms. Again, Brown testified
> that, beyond agreeing to submit Kimmes' cost figures to an Evans
> mortgage loan officer, he did not recall making any promises or discuss
> specific mortgage terms with Kimmes.

ER 804.

The Court finds no error in this conclusion.  Kimmes argues that the bankruptcy

court should have believed him, and not Brown, in light of the bankruptcy court's more

general observation that Brown recalled "'surprisingly little about his conversations with

Kimmes.'"  *Opening Br.*, Dkt. 9, at 11 (quoting ER 782).  But the bankruptcy court's

observation about Brown's memory does not mean it could not also decide that Kimmes'

testimony lacked credibility, or that there was simply insufficient proof – aside from the

credibility of either witness – to find an enforceable agreement.  Further, the bankruptcy

court's credibility determinations receive heightened deference because of "'the fact

finder's unique opportunity to observe the demeanor of the witnesses.'" *Valenzuela v.

Michel*, 736 F.3d 1173, 1176-77 (9th Cir. 2013) (citation omitted).

After reviewing the bankruptcy court's factual findings, as well as the relevant

evidence, there is nothing that leaves this Court with a "definite and firm conviction" that

the bankruptcy court erred in reaching its factual findings related to the alleged oral loan

agreement, or in making its credibility determinations underlying these factual findings.

Finally, the Court is not persuaded by the bank's argument that this Court should

not reach the equitable-estoppel issue. Kimmes raised a promissory-estoppel argument

below, but the bankruptcy court analyzed both promissory and equitable estoppel. ER

30. Under these circumstances, the Court finds that the equitable-estoppel issue is

sufficiently developed for appellate review.

**3.    The Bankruptcy Court Did Not Err in Finding Kimmes Failed to Establish an Oral Agreement Relating to Insufficient-Funds Fees**

Kimmes next argues that the bankruptcy court erred by finding that the bank had

not agreed to remove insufficient-funds fees charged to Kimmes' account. Kimmes said

Brown promised him these fees would be removed. Brown said he could not recall ever

making such a promise. The bankruptcy court determined that Brown was a more

credible witness. ER 804 ("On balance, the Court believes Brown.")

As before, Kimmes challenges the bankruptcy court's credibility determination.

To support this argument, Kimmes points to evidence supporting his belief that the fees

would be removed. But he has not pointed to any evidence that definitely and firmly

convinces this Court that the bankruptcy court erred in finding that no such agreement

was made, or in finding that Brown was more credible than Kimmes. In other words,

Kimmes has pointed to evidence showing that the bankruptcy court *could* have found that

the bank made such an agreement. But he must do more than that to succeed on appeal;

he must effectively show that the bankruptcy court's findings are simply not plausible in

light of the factual record. As the Supreme Court has explained,

If the district court's account of the evidence is plausible in light of the

record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Anderson v. Bessemer City*, 470 U.S. 564, 573-74 (1985) (as quoted in *Mondaca-Vega v. Holder*, 718 F.3d 1075, 1083 (9th Cir. 2013)).

Kimmes also argues that the bank was bound to remove these fees even absent an agreement between the parties because Brown controlled how the loan funds were disbursed. *Opening Br.*, Dkt. 9, at 12. The bank complained that Kimmes raised this issue for the first time on appeal, and Kimmes did not refute that assertion in his reply brief. The Court therefore declines to reach this issue.

**4.     The Bankruptcy Court Did Not Err in Finding Kimmes Failed to Establish a Breach of the Covenant of Good Faith and Fair Dealing**

Kimmes' next argument generally relates to the bank's election to commence foreclosure proceedings on his home. He argues that the bank breached the covenant of good faith and fair dealing by failing to comply with its internal, "Special Assets Policy" for dealing with distressed loans. Under this policy, the bank does three things before initiating foreclosure proceedings: (1) when the loan becomes seven days overdue, the bank notifies the borrower; (2) when the loan becomes 14 days overdue, the bank provides a second notice; and (3) when the loan becomes 30 days overdue, the bank accords the borrower a right to cure. *See Opening Br.*, Dkt. 9, at 13; ER 282-85. In this case, the bank commenced foreclosure proceedings on Kimmes' home without taking these steps.

Kimmes does not point to any evidence establishing that this policy was incorporated into any of the parties' underlying loan agreements, and the bankruptcy court did not make such a finding. As a result, Kimmes is effectively arguing that the implied covenant of good faith and fair dealing should be used to inject this policy into the parties' loan agreements. As the Idaho Supreme Court has explained, however,

> *the duty of good faith does not extend to obligate a party to accept a material change in the terms of its contract.* … Nor does it inject substantive terms into the parties contract. Rather, it requires only that the parties perform in good faith the obligations imposed by their agreement. ... *Thus, the duty arises only in connection with terms agreed to by the parties* . . . .

*Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 824 P.2d 841, 863 (Idaho 1991) (quoting *Badgett v. Sec. State Bank,* 807 P.2d 356, 360 (Wash. 1991) (en banc) (internal quotation marks omitted; emphasis supplied by *Bliss*)).

Kimmes next argues that the bank breached the covenant of good faith and fair dealing by failing to comply with regulations applicable to lenders who participate in loan programs guaranteed by the Farm Service Agency (FSA).[4] In particular, Kimmes points to regulations in subpart (b)(3) of 7 C.F.R. § 762.143(b), which requires a lender servicing a "distressed account" to take various steps in the event of a borrower default. One of these steps is to arrange a meeting with the borrower within 15 days of a default to "identify the nature of the delinquency and develop a course of action that will

---

[4] The FSA is an agency of the United States Department of Agriculture. *See* 7 C.F.R. § 761.2 (a).

eliminate the delinquency and correct the underlying problems." 7 C.F.R.

§ 762.143(b)(3).

This argument fails for the same reasons already discussed: Kimmes cannot rely on the implied covenant of good faith and fair dealing to inject these guidelines into the parties' loan agreement. Additionally, this argument fails to the extent Kimmes suggests that the bank was independently bound by the regulations. These regulations state that they apply to "Standard Eligible Lenders" and lenders in the "Certified Lender Program." D.L. Evans is a "Preferred Lender." *See* ER 21, 28. Sub-part (c) of the applicable regulation deals with lenders in the preferred lender program; it provides that such lenders "will service defaulted loans according to their lender's agreement." 7 C.F.R. § 762.143(c).

## 5. The Bankruptcy Court Did Not Err in Refusing to Award Kimmes Attorneys' Fees Related to the Pickup Foreclosure

Kimmes also claims that the bankruptcy court erred by failing to award him $2,000 based on the bank's allegedly wrongful foreclosure of his pickup. The record is not entirely clear with respect to a loan made to finance a pickup. At trial, loan officer Shane Hamblin testified that there was a "pickup loan," but he did not provide details regarding the loan amount or any other terms. ER 177:19-21; 185:25 to 186:3. Hamblin further testified that in approximately September 2010, Mr. Kimmes attempted to make a payment on the pickup loan, but the bank refused to accept the payment for that purpose. ER 197:16 to 198:8. The bank then commenced a foreclosure action on the pickup. The

parties later stipulated to a dismissal of this action – with prejudice – with each side agreeing to bear their own attorneys' fees. *See* ER 274:14 to 275:15.

In bankruptcy court, Kimmes nevertheless claimed that the bank owed him $2,000 in attorneys' fees related to the pickup foreclosure. He did not articulate a specific legal theory in support of his claim. The bankruptcy court observed that Kimmes might be attempting to assert a claim for breach of contract, but concluded that such a claim would fail because the bank "appears to have acted properly in suing to collect the loan upon Kimmes' default, . . . ." ER 809-10.

The Court will affirm the bankruptcy court's ruling because Kimmes' attempt to circumvent the stipulated dismissal (which expressly provided that the parties bear their own attorneys' fees) offends the principle of finality underlying a dismissal with prejudice. *See generally In re Baker,* 74 F.3d 906, 910 (9th Cir. 1996) ("For res judicata purposes, an agreed or stipulated judgment is a judgment on the merits."); *Nesselrode v. Provident Fin., Inc. (In re Provident Fin., Inc.)*, 466 Fed. Appx. 672, 673 (9th Cir. 2012) (unpublished disposition) ("The bankruptcy court properly concluded that res judicata barred Nesselrode from relitigating claims in connection with Provident Financial's foreclosure of his property because he had asserted claims arising from the same transactional nucleus of facts in prior federal and state court actions."). Further, under these circumstances, Kimmes cannot properly circumvent the parties' stipulation regarding attorneys' fees. *Cf. Straub v. Smith*, 175 P.3d 754, 758 (Idaho 2007) (party to stipulated dismissal with prejudice did not waive claim for fees and costs where, unlike

here, the stipulated dismissal did not address fees and costs).

**6.      The Bankruptcy Court Did Not Err in Denying Relief Based on Kimmes'
         General Claims that the Bank Exercised Bad Faith**

Kimmes' remaining contentions on appeal relate to his sweeping general assertion

that the bank exercised bad faith toward him, starving him of the cash he needed to

effectively run his business, which eventually forced him into bankruptcy.  *See Opening*

*Br.*, Dkt. 9 at 2 (Issue Nos. 5, 7, 8).  The problem with this argument is that Kimmes has

not demonstrated that the bank committed any actionable wrongdoing by, among other

things, refusing to lend Kimmes more money or working with him to prevent a

bankruptcy.  In hindsight, that may well have been the better course for all concerned,

and the Court understands why Kimmes would choose to bank elsewhere after his

experiences with D.L. Evans.  But even accepting that the bank treated its longtime

customer poorly, this does not mean the bank's conduct gives rise to a legal action.[5]

More specifically, Kimmes has not adequately explained how the bank committed an

actionable wrong against him by: (1) placing his loans on watch lists; (2) downgrading

his rating as a potential borrower; (3) lending him money for the purpose of paying off

preexisting loans with the bank; or (4) failing to provide additional notices before

---

[5] The bankruptcy court made a similar observation:  "In aggressively seeking to collect from him
without affording him the courtesy of more or different demands that he comply with his loan
agreements, perhaps Evans treated Kimmes poorly, but this is not a basis for affirmative relief. While
Evans' alleged failure to give him "extra" notices about his defaults, and its other hardball tactics toward
him, may have justified his cessation of business with Evans, its tactics did not amount to grounds to sue
the bank."  ER 807.

commencing foreclosure proceedings.  Ultimately, then, the Court is in no position to afford any relief to Kimmes, as he has not identified any errors committed by the bankruptcy court.

**7.    Attorneys' Fees and Costs**

Kimmes' attack on the bankruptcy court's award of attorneys' fees and costs is contingent upon convincing this Court that Kimmes is the prevailing party in this action. For all the reasons discussed above, Kimmes did not convince the Court on this point.  As a result, there is no need to disturb the bankruptcy court's order awarding costs and attorneys' fees to the bank.  The Court will affirm this order.

**CONCLUSION**

The bankruptcy court's judgment in favor of D.L. Evans Bank, as well as its award of fees and costs, is **AFFIRMED.**  This case is remanded to the bankruptcy court for further proceedings consistent with this decision.

DATED: March 25, 2015

B. Lynn Winmill
Chief Judge
United States District Court